**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**Timothy David LINCK, Appellee–Defendant.**

No. 34A04–9803–CR–139.

Court of Appeals of Indiana.

April 5, 1999.

Transfer Granted June 8, 1999.

Jeffrey A. Modisett, Attorney General, James A. Garrard, Deputy Attorney General, Indianapolis, for appellant.

Mark A. Ryan, Kokomo, for appellee.

## OPINION

SULLIVAN, Judge

Appellant, the State of Indiana, appeals the trial court's grant of defendant, Timothy David Linck's (Linck) motion to suppress.

On April 30, 1997, Officers Hudson and Foster of the Kokomo Police Department were dispatched to Linck's apartment to investigate a complaint of illegal drug use. As the officers entered Linck's apartment building and ascended the stairs, they smelled what they believed to be marijuana burning. Officer Hudson then knocked on Linck's apartment door. After a few seconds, Linck answered the door and allowed the officers to enter. While inside Linck's apartment, Officers Hudson and Foster noticed that the odor of marijuana was stronger.

Officer Hudson then informed Linck that they had received a complaint of illegal drug use. Officer Hudson also informed Linck that he smelled the odor of burning marijuana and believed that Linck had been engaging in illegal drug activity. Officer Hudson then asked Linck "what the problem was" in reference to the illegal drug activity or odor. Record at 69. In response, Linck stated that he had "just smoked a joint." Record at 70. Based upon Linck's response, Officer Hudson then asked him if "there was anything left or if there was any more." Record at 70. Linck answered yes and immediately there-

after retrieved from the refrigerator a bag which contained 28.2 grams of marijuana. After Officer Hudson took possession of the marijuana, he asked Linck "if that was all," to which Linck responded that there was some in the bedroom. Record at 71. Officer Foster followed Linck into the bedroom and seized another bag containing 3.2 grams of marijuana. Linck was then placed under arrest.

On May 1, 1997, Linck was charged with Possession of Marijuana,[1] a Class D felony. On September 4, 1997, Linck filed a motion to suppress the marijuana and the statements he made immediately prior to his arrest. Specifically, Linck argued that because the officers had failed to advise him of his Miranda rights prior to conducting custodial interrogation, his statements and the marijuana were unlawfully obtained.

A hearing was held on the motion to suppress on December 22, 1997. After taking the matter under advisement, the trial court granted Linck's motion, suppressing all of Linck's statements and the two bags of marijuana. As a result, the charge against Linck was dismissed. The State now appeals the trial court's order pursuant to I.C. 35–38–4–2(5) (Burns Code Ed. Repl.1998), which permits an appeal by the State if the ultimate effect of the order precludes the State from further prosecution.

■■■ During the suppression hearing, the State was required to demonstrate that the measures it used to secure the statements and marijuana were constitutional. Thus, the State is appealing from a negative judgment, which this court will reverse only if the evidence is without conflict and all reasonable inferences lead to an opposite conclusion. State v. Farber (1997) Ind.App., 677 N.E.2d 1111, 1113–14, trans. denied. This court neither reweighs the evidence nor judges the credibility of witnesses and views the evidence in the light most favorable to the trial court's conclusion. Id. at 1114.

■■■ Miranda warnings are based upon the Fifth Amendment Self–Incrimination Clause, and were designed to protect an individual from being compelled to testify against himself. Curry v. State (1994) Ind. App., 643 N.E.2d 963, 976, trans. denied. However, the procedural safeguards of Miranda apply only when an individual is subjected to custodial interrogation. Id. Therefore, police officers are not required to give a defendant Miranda warnings unless the defendant is both in custody and subject to interrogation.

■■■ Interrogation includes both express questioning and words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Id. at 977. However, interrogation must involve a measure of compulsion beyond that inherent in custody itself. Id. In order to be in custody for purposes of Miranda, one need not be placed under formal arrest. Thompson v. State (1998) Ind.App., 692 N.E.2d 474, 476. Rather, the determination is based upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in the accused's circumstances would believe that he is not free to leave. Id; Cliver v. State (1996) Ind., 666 N.E.2d 59, 66, reh'g denied. The determination involves an examination of all the objective circumstances surrounding the interrogation. Loving v. State (1995) Ind., 647 N.E.2d 1123, 1125.

In its order granting the motion to suppress, the trial court concluded that all of the questions asked by the officers, including Officer Hudson's initial question of "what the problem was," amounted to interrogation because they were made with the intention of eliciting an incriminating statement. The court further concluded that Linck was "in custody" for purposes of Miranda after he admitted that he smoked the joint.

■■■ Without reweighing the evidence or the credibility of the witnesses, and viewing the evidence in the light most favorable to the trial court's ruling, we find that the trial court properly concluded that the officer's

---

1. I.C. 35–48–4–11(1) (Burns Code Ed. Repl. 1998). Although the offense is normally a Class A misdemeanor, it was elevated to a Class D felony because the officers seized more than thirty (30) grams of marijuana.

questions amounted to interrogation. At the suppression hearing, Officer Hudson testified that, before he asked Linck the first question of "what the problem was," he had already advised Linck that he had received a complaint of illegal drug activity, that he believed that the illegal activity had been occurring and that he had smelled burning marijuana. Officer Hudson further testified that he asked this question specifically "in reference to the illegal drug activity or odor." Record at 69–70. Under these circumstances, Officer Hudson should have known that his question was reasonably likely to elicit an incriminating response. Therefore, the question amounted to interrogation.

We similarly conclude that the remaining two questions, regarding the possible existence of additional amounts of marijuana, also constituted interrogation. When Officer Hudson asked Linck if "there was anything left or if there was any more," Linck had just admitted smoking a joint. Further, immediately before Officer Hudson asked Linck "if that was all," Linck had just retrieved the first bag of marijuana, containing 28.2 grams of marijuana from the refrigerator. Record at 70, 71. These questions clearly were likely to elicit an incriminating response in regard to the presence and location of marijuana. In fact, because the officers obtained the second bag of marijuana, the prosecutor was able to elevate Linck's charge from a Class A misdemeanor to a Class D felony. Therefore, we cannot say that the trial court erred by concluding that Officer Hudson's questions amounted to interrogation.

We now turn to whether Linck was in custody for purposes of requiring *Miranda* warnings. The record reveals that Linck was not formally arrested until after the second bag of marijuana had been seized. The State contends that it was only at that point in time that Linck was in custody for purposes of *Miranda*. However, Linck contends, as the trial court concluded, that he was in custody after he admitted smoking the joint because a reasonable person would not have felt free to leave following that admission. We agree.

By informing the officers that he had just smoked the marijuana, Linck admitted to engaging in illegal activity, confirming the officers' suspicions and the original complaint. Further, immediately before Linck made this admission, the officers had smelled burning marijuana both in the hallway and in Linck's apartment. At no time did the officers inform Linck that he was free to leave. As a result, we agree with the trial court that a reasonable person would not have felt free to leave. Thus, Linck was in custody for purposes of *Miranda* after he admitted smoking the marijuana. At that point, the officers were required, but failed, to advise Linck of his *Miranda* warnings before they questioned him further. Therefore, any statements made by Linck after he admitted smoking the marijuana, should have been suppressed.[2]

Nevertheless, the State argues that, although *Miranda* requires exclusion of Linck's statements in regard to the location of the bags of marijuana, it does not similarly require exclusion of the physical evidence itself as fruit of the poisonous tree. According to the State, the "fruits" doctrine applies only to evidence which is seized following an actual constitutional violation and not a mere violation of *Miranda's* prophylactic procedures. Consequently, the State contends

---

**2.** We note that in his motion to suppress, Linck sought to suppress the two bags of marijuana and "any and all oral and written communications, confessions, statements, admissions or tests, whether inculpatory or exculpatory, alleged to have been made by the Defendant *prior to,* at the time of, or subsequent to his arrest in this cause." Record at 22 (emphasis supplied). Thereafter, in its order granting Linck's motion to suppress, the court concluded that the "Motion to Suppress Evidence [was] granted as to all evidence alluded to in the first paragraph of [Linck's] Motion." Record at 50.

However, as stated above, Linck was not in custody, and therefore was not subject to custodial interrogation, until after he admitted smoking the joint. Therefore, his admission should not have been suppressed. *See Loving,* 647 N.E.2d at 1125 (law enforcement officer's duty to give *Miranda* warnings does not attach unless person is in custody); *Curry, supra,* 643 N.E.2d at 976 (only statements which are testimonial in nature and elicited during custodial interrogation must be suppressed). Thus, to the extent the trial court's order had the effect of suppressing Linck's admission to smoking the joint, it was in error.

that, because Linck's confession was not the product of inherently coercive police tactics or methods offensive to due process, there can be no Fifth Amendment violation and, consequently, no tainted physical evidence.

In support of its contention, the State relies upon several United States appellate court decisions which have concluded that physical evidence derived from a statement obtained in violation of *Miranda* is admissible absent evidence of coercion or other misconduct on the part of law enforcement officers sufficiently egregious to offend due process. *See, e.g., United States v. Mendez* (1994) 5th Cir., 27 F.3d 126, 130 (mere violation of *Miranda* absent constitutional violation does not trigger the "fruits" doctrine and, therefore, derivative evidence is admissible); *United States v. Crowder* (1995) 6th Cir., 62 F.3d 782, 786 (nontestimonial physical evidence discovered from unwarned statement is admissible if unwarned statement was not product of coercion under Fifth Amendment), *cert. denied,* 516 U.S. 1057, 116 S.Ct. 731, 133 L.Ed.2d 682. Our research reveals that other· courts have reached a similar conclusion. *See United States v. Elie* (1997) 4th Cir., 111 F.3d 1135, 1141–42; *United States v. Gonzalez–Sandoval* (1990) 9th Cir., 894 F.2d 1043, 1048; *United States v. Eggers* (1998) S.D.N.Y., 21 F.Supp.2d 261, 267–68.

Although many of the courts which have addressed this issue acknowledge that the United States Supreme Court has not directly addressed the issue, they nevertheless, conclude that another United States Supreme Court decision, *Oregon v. Elstad* (1985) 470 U.S. 298, 105 S.Ct. ·1285, 84 L.Ed.2d 222, is highly persuasive authority. *See, e.g., United States v. Guzman* (1998) S.D.N.Y., 11 F.Supp.2d 292, 298 (finding that "[s]ince *Elstad* . . . an overwhelming majority of lower courts have found its reasoning to be applicable to the seizure of physical evi-

dence"). In *Elstad,* the Court was asked to determine whether a defendant's statements, which were made without the required *Miranda* warnings at the defendant's home, necessarily rendered a subsequent written confession, made after the defendant had been transported to the police station, inadmissible. The defendant contended that his subsequent written confession had been tainted by his initial statement which was made without the proper *Miranda* warnings and, therefore, was barred by the fruit of the poisonous tree doctrine. *Id.* at 302, 105 S.Ct. 1285. However, the 6–3 majority of the *Elstad* Court rejected that argument, finding that because the defendant's initial statement, although made without the benefit of *Miranda,* was not coerced so as to violate the Fifth Amendment's Self–Incrimination Clause, the exclusionary rule did not require the subsequent written confession to be suppressed. *Id.* at 318, 105 S.Ct. 1285.

In reaching its decision, the *Elstad* Court noted that the fruit of the poisonous tree doctrine prevents the State from offering evidence which has been tainted by a constitutional violation. *Id.* at 305–306, 105 S.Ct. 1285. The Court also noted that the *Miranda* warnings are not themselves rights protected by the Constitution but only measures employed to ensure that the right against compulsory self-incrimination is protected. *Id.* at 305, 105 S.Ct. 1285. Thus, the Court reasoned that, because *Miranda* sweeps more broadly than the Fifth Amendment itself, a violation of *Miranda* may occur even though there is no Fifth Amendment violation. *Id.* at 306, 105 S.Ct. 1285. The Court then concluded that, absent some form of coercion, which would constitute a violation of the Fifth Amendment, the exclusionary rule did not require suppression of a subsequent valid written confession. *Id.* at 318, 105 S.Ct. 1285.[3] The State asks this

---

3. In its decision, the *Elstad* Court also relied upon *Michigan v. Tucker* (1974) 417 U.S. 433, 452, 94 S.Ct. 2357, 41 L.Ed.2d 182, which held that the testimony of a witness, whose identity was discovered from a confession which was taken without the benefit of *Miranda* warnings, was not inadmissible as fruit of the poisonous tree. It would seem that *Tucker* would provide guidance in this case since both the issue here

and in *Tucker* involved the admissibility of evidence derived from a confession taken without *Miranda* warnings.

Prior to *Elstad,* however, the precedential value of *Tucker* was uncertain. Although *Miranda* was applicable during the defendant's trial in *Tucker,* it was not in effect at the time the defendant was interrogated. *Tucker, supra* at 435, 94 S.Ct. 2357. Thus, some commentators have

court to extend the holding and reasoning of *Elstad* to permit the admission of physical evidence obtained as a direct result of an improper interrogation.[4]

■ Although *Elstad* appears to be rather persuasive authority,[5] it remains that the United States Supreme Court has not yet directly addressed this issue. *See* 1 *Wayne R. LaFave & Jerold H. Israel, Criminal Procedure* § 9.5(b), at 201 (1984 & Supp. 1991) ("[I]t may be questioned as to whether the Supreme Court will uphold application of the fruits doctrine based on a *Miranda* violation, even where . . . the acquisition of the physical evidence was closely tied to the illegally obtained confession."); *Barry Latzer, State Constitutional Criminal Law* § 4.12, at 4–45 (1995) ("Unresolved by *Elstad* is whether inanimate evidentiary products of a *Miranda* violation are also suppressible. . . .").[6] Further, although the Indiana Supreme court has applied the holding in *Elstad* under cir-

speculated that because the officers were unaware of their obligation to give *Miranda* warnings, suppression of the evidence would have been an unusually harsh result. *See* 1 *Wayne R. LaFave & Jerold H. Israel, Criminal Procedure* § 9.5(a), at 763 (1984). It has also been suggested that, subsequent to *Tucker*, the U.S. Supreme Court indicated that witness testimony would be treated in a special way favoring admissibility even in a Fourth Amendment context of the poisonous tree doctrine. A similar extension of favorable treatment under the Fifth Amendment might therefore not seem surprising. *Id.*

4. Several years after *Tucker* was decided, however, when the U.S. Supreme Court had the opportunity to address the issue presented in *Elstad*, the Court referred to *Tucker* favorably, noting that the "reasoning [in *Tucker*] applie[d] with equal force when the alleged 'fruit' of a noncoercive *Miranda* violation [was] neither a witness *nor an article of evidence* but the accused's own voluntary testimony." *Elstad, supra* at 308, 105 S.Ct. 1285 (emphasis supplied). Thus the *Elstad* decision has been considered "illuminating" by some courts in regard to the issue of the admissibility of physical evidence. *See Patterson v. United States* (1988) 485 U.S. 922, 923, 108 S.Ct. 1093, 99 L.Ed.2d 255 (Justices White and Brennan dissenting from the denial of certiorari). However, according to Justice White in *Patterson*, both *Tucker* and *Elstad* left open the question of the admissibility of physical evidence derived from a *Miranda* violation. *Id.*

5. In applying *Elstad*, it appears, as the State contends, that Linck was not subjected to physical violence or other means used to compel him to inform the officers that he possessed additional marijuana. During the suppression hearing, Linck testified that the officers were courteous and cooperative and did not use coercive measures "any more than they were police officers and [he] thought [he] was supposed to do what [he] was told." Record at 96. Thus, although the officers had failed to give Linck his *Miranda* warnings, there is no evidence that they violated his Fifth Amendment right against compelled self-incrimination.

6. It is also questionable whether an extension of *Elstad* to allow the admission of physical evidence would be advisable. Justice Brennan not-

ed in his dissenting opinion in *Elstad* that "expert interrogators acknowledge" that confessions are an excellent source of other evidence. *Elstad, supra*, 470 U.S. at 357, 105 S.Ct. 1285 (Brennan, J., dissenting). If police officers knew that only the confession taken in violation of *Miranda* would be suppressed, and not the evidence derived therefrom, there would be no incentive on the part of the officers to comply with *Miranda*. The New Hampshire Supreme Court adhered to this line of reasoning when it concluded, upon state constitutional grounds, that statements obtained in violation of *Miranda* could not be used to establish probable cause for a search warrant. *See State v. Gravel* (1991) 135 N.H. 172, 601 A.2d 678, 683. Rejecting the United States Supreme Court's distinction between a mere violation of *Miranda* and an infringement of the Fifth Amendment, the New Hampshire court stated as follows:

Prosecutors and police officers understand that the consequences of failing to abide by *Miranda* is the suppression of the defendant's statements. To allow the police the freedom to disregard the requirements of *Miranda* and thereby risk losing only the direct product of such action, but not the evidence derived from it, would not only not deter future *Miranda* violations but might well tend to encourage them. An officer more concerned with the physical fruits of an unlawfully obtained confession than with the confession itself might reasonably decide that the benefits of securing admissible derivative evidence outweighed the loss of the statements. *Miranda* would thus have lost a substantial amount of its value in protecting against compelled self-incrimination. *Id.* at 685.

Although it appears that the officers in this case were not aware that they had gone beyond merely investigating the crime to interrogating Linck while in custody, *see Elstad, supra* at 309, 105 S.Ct. 1285 (noting that the "task of defining 'custody' is a slippery one," and that officers will in good faith make mistakes) the concerns of the New Hampshire court are valid and raise serious questions regarding the extension of *Elstad* to permit the admission of physical evidence obtained directly through confessions taken in violation of *Miranda*.

cumstances similar to those presented in *Elstad*, *see Deckard v. State* (1996) Ind., 670 N.E.2d 1, 6,[7] our research reveals that it has not extended *Elstad* to allow the admission of physical evidence.

In keeping with this analysis, Linck asks this court to rely upon a pre-*Elstad* decision from our Supreme Court which specifically held that, when a confession is suppressed because it was unlawfully obtained, evidence which is inextricably bound to the confession must also be suppressed. *Hall v. State* (1976) 264 Ind. 448, 453, 346 N.E.2d 584, 588, *reh'g denied*. We readily recognize that because *Hall* was decided before *Elstad*, the decision contains no discussion regarding the distinction between a mere violation of *Miranda* and an infringement of the Fifth Amendment. Therefore, the validity of the proposition set forth in *Hall*, upon which Linck relies, may be questioned. Nonetheless, we are bound by that holding until our Supreme Court concludes otherwise or the United States Supreme Court addresses this issue. Because the bags of marijuana were inextricably bound to the statements Linck made disclosing their location, they must be suppressed. The trial court did not err by granting the motion to suppress all of Linck's statements made after he admitted smoking the marijuana and the bags of marijuana discovered in his apartment.

As heretofore noted, the trial court erred in suppressing Linck's admission that he "had just smoked a joint." However, that admitted use was not the subject of the Class D felony charge which was dismissed as a result of the ruling upon the Motion to Suppress. The error, therefore, had no effect upon the proceedings before us on appeal.

The judgment is affirmed.

SHARPNACK, C.J., and BROOK, J., concur.

---

**7.** Our Supreme Court has also stated its opinion that *Miranda* is not a constitutional mandate. *See Allen v. State* (1997) Ind., 686 N.E.2d 760, 770 (noting that, although *Miranda* is grounded in the Fifth Amendment privilege against compelled self-incrimination, it is "well-settled that the specific dictates promulgated in that opinion are not constitutionally mandated"), *reh'g denied, cert. denied,* —— U.S. ——, 119 S.Ct. 807, 142 L.Ed.2d 667.