**Michael C. GREEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 20A03–0007–CR–00257.**

Court of Appeals of Indiana.

July 31, 2001.

Transfer Denied October 17, 2001.

---

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Michael C. Green, challenges his jury convictions for reckless homicide, as a Class C felony[1] and five counts of criminal recklessness, as Class C felonies.[2] Upon appeal, Green contends that the trial court erred in denying both his motion for change of venue from the county and his motion to suppress statements he made to law enforcement officers while hospitalized for treatment of his injuries.

We affirm.

The facts most favorable to the verdict reveal that on July 26, 1999, Green was driving his green Oldsmobile northbound at a high rate of speed on County Road 9 near Elkhart, Indiana. On this same day, James L. Slaight, his wife, and their four children were traveling southbound on County Road 9 in the family's white Dodge Caravan. Although Green was northbound, he was traveling in the southbound lane of traffic. As Green attempted to re-enter the northbound lane of traffic, he lost control of his automobile, crossed back into the southbound lane and collided nearly head-on with the Slaight van. As a result of the accident, four-year-old Hope Slaight was killed, and the other members of the Slaight family were seriously injured. Green also sustained injuries and was treated at Elkhart General Hospital immediately following the accident. The State charged Green with reckless homicide as a Class C felony and five counts of criminal recklessness, also Class C felonies.

Prior to trial, Green filed a verified motion for change of venue from the county to "secure a fair and impartial trial on the grounds that there exists so great a prejudice against the Defendant in this county by reason of extensive and adverse publicity in the newspapers and television relating to the offense charged...." Record at 51. In support of his motion, Green attached an exhibit listing eighteen related newspaper articles and copies of these articles. On October 22, 1999, Green supplemented his motion with an additional exhibit detailing sixty-eight news and radio items related to the incident, the investigation, the victims' conditions and fundrais-

1. Ind.Code § 35–42–1–5 (Burns Code Ed. Repl.1998).

2. Ind.Code § 35–42–2–2(c)(1) (Burns Code Ed. Repl.1998). The offense is a Class C felony if it causes serious bodily injury by means of a deadly weapon, here a 1994 Oldsmobile. See *Johnson v. State,* 455 N.E.2d 932 (Ind.1983).

ers. Green contended that it would be "impossible to obtain a fair and impartial jury in this case" and that he feared the prospective jurors might harbor "preconceived bias and prejudice against Mr. Green as a result of all of the publicity and all of the television that has appeared." Record at 420, 424–25. Green believed an impartial juror was one "unacquainted with this case, in this community, who [has not] heard anything about it. . . ." Record at 424. On October 25, 1999, the trial court, finding that Green had failed to show that an impartial jury could not be seated, denied the motion for change of venue.

On March 14, 2000, Green filed a motion to suppress the statements he made to police officers while being treated at the hospital. Green asserted that his statements were not voluntary because he was suffering from physical injuries, was disoriented and unable to think clearly, and under the influence of pain medication. In addition, Green asserted that he was entitled to *Miranda* warnings based upon the custodial nature of the questioning. According to Green, the questioning was custodial because "[u]nder his circumstances, a reasonable person would not feel at liberty to leave." Record at 121. At the March 20, 2000 hearing upon the motion to suppress, the trial court heard testimony and argument by both parties. Testimony revealed that Green was questioned both in the x-ray room, prior to being x-rayed, and in the treatment room following the x-rays. According to Green, he was in extreme pain as the result of his injuries, had been given morphine, and was going in and out of consciousness during the questioning. Green further testified that he was not told he was suspected of criminal activity at the time he was questioned. According to Officer Starcevich, he was dispatched to the hospital for the purpose of questioning those involved in the collision

to "identify all of the parties that were involved in the crash, and assess them, as to the extent of their injuries, and also if there was anybody there that could be interviewed, I was going to interview them and find out what happened, because I really didn't know what happened." Record at 471. Officer Starcevich testified there were no suspects of criminal activity at the time he went to the hospital to question the parties and that he did not give Green the *Miranda* warnings because Green was not a suspect. Officer Starcevich stated that prior to questioning the parties, he spoke with the emergency room doctor who advised that Green had not yet received any medication or treatment. According to Officer Starcevich, Green did not lose consciousness while he was being questioned. Officer Starcevich testified that he questioned Green concerning his name, address, place of employment, date of birth, social security number, what vehicle he was in at the time of the collision, whether he was alone in the vehicle, whether he was the driver of the vehicle, what he had been doing prior to the collision, and the speed at which the vehicle was traveling at the time of the collision. The trial court, finding that Green was not entitled to *Miranda* warnings because the officers had not yet focused upon him and that his statements were not made as the result of a custodial interrogation, denied the motion to suppress.

A jury trial commenced on March 21, 2000. Forty-five prospective jurors were called. During voir dire, several prospective jurors indicated that they were familiar with the case, either through pre-trial publicity, fundraising activities, or familiarity with the Slaight family, and some indicated that they were unable to set aside their preconceived opinions concerning the case. In addition, prospective jurors Gruver, Wagner, and Heckaman indicated that

they would tend to believe the testimony of a police officer over another witness. However, when later questioned by the court, Gruver and Wagner both indicated that they would approach weighing the testimony of a police officer in the same manner as they would any other witness. Mr. Wagner was selected to serve on the jury, but Mr. Gruver and Mr. Heckaman were not.[3] At the conclusion of voir dire, ten prospective jurors were dismissed and four were seated during the first panel; six were dismissed and two were seated during the second panel; three were dismissed and four were seated during the third panel; two were dismissed and one was seated during the fourth panel; and, the sole prospective juror called was seated during the fifth panel. The jury convicted Green as charged on all counts.

## I.

### Motion for Change of Venue

Green contends that the trial court erred in denying his motion for change of venue from the county. In particular, Green argues that he was prejudiced by the denial of his motion both because the media coverage was so pervasive that it was impossible for an impartial jury to be selected and because the "cumulative effect of the earlier voir dire could only lead to the conclusion that the statements impacted the remaining jurors to the degree that it would have been difficult, if not impossible, for those remaining to render an impartial decision...." Appellant's Brief at 18.

■ We review a trial court's denial of a motion for change of venue for an abuse of discretion. *Specht v. State*, 734 N.E.2d 239, 241 (Ind.2000). To prevail, a defendant must establish both prejudicial pretrial publicity and the jurors' inability to set aside preconceived notions of guilt and render an impartial verdict based upon the evidence. *Id.* Pretrial publicity is prejudicial when it contains either inflammatory material that is not admissible at trial or when it misstates or distorts the evidence. *Clemens v. State*, 610 N.E.2d 236, 240 (Ind.1993); *Barnes v. State*, 693 N.E.2d 520, 525 (Ind.1998). However, mere exposure to press coverage will not suffice. *Barnes*, 693 N.E.2d at 524; *Specht*, 734 N.E.2d at 241; *see also* Ind. Code § 35-37-1-5(b) (Burns Code Ed. Repl.1998) (providing that prospective juror may be allowed to serve despite existence of preconceived notions of guilt stemming from pretrial publicity, so long as juror states and court concludes that the juror can render a verdict based upon the law and the evidence presented). A trial court does not abuse its discretion where voir dire reveals that the seated jurors were able to set aside any preconceived notions of guilt and render a verdict based upon the evidence. *Elsten v. State*, 698 N.E.2d 292, 294 (Ind.1998). Furthermore, we presume that a juror's testimony in this regard during voir dire is truthful, unless the defendant shows a "general atmosphere of prejudice throughout the community." *Brown v. State*, 563 N.E.2d 103, 105 (Ind.1990).

■ In support of his motion, Green cited to the evidence of publicity he presented at the motion for change of venue hearing and the statements made by prospective jurors during voir dire that they had either read or heard about the collision or participated in fundraising efforts for the Slaight family. To be sure, the pretrial publicity in this case was prejudi-

---

**3.** Mr. Wagner was one of the prospective jurors who stated he had "read it in the paper"; however, he also stated that he did not have much time to read the newspaper and that he would be impartial. Record at 577.

cial. On August 12, 1999, the *South Bend Tribune* published an article entitled "Crash suspect has jail record." Record at 67. The article detailed Green's criminal history and included information concerning convictions that were not admissible during the trial.[4] Other newspaper articles contained similar criminal history information.[5] Clearly these newspaper articles contained inflammatory, inadmissible information. Thus, Green established the existence of prejudicial pretrial publicity. However, to prevail, he must also show that the seated jurors were unable to set aside any preconceived notions of guilt and decide the case based upon the evidence.

Here, Green calls our attention to the voir dire testimony of certain prospective jurors to show that their "thoughts" and "comments and reasons for partiality" were heard by all the prospective jurors, such that "those remaining in the pool and those named to the jury could not have remained unbiased."[6] Appellant's Brief at 11, 13. However, Green has not directed us to any evidence in the record establishing that the seated jurors were unable to be impartial due to either the pretrial media coverage or the comments made by the other prospective jurors. He cites to no portion of the record revealing unresolved partiality on the part of any juror who participated in the trial. Thus, Green has failed to establish that the jurors who were seated were unable to set aside any preconceived notions of guilt or to render a verdict based upon the evidence. As our Supreme Court has consistently held, this is fatal to a defendant's claim. *See Drollinger v. State*, 274 Ind. 5, 14, 408 N.E.2d 1228, 1235 (1980) (trial court did not err in denying motion for change of venue where defendant failed to establish juror partiali-

---

4. The *South Bend Tribune* article noted Green's 1996 conviction and sentence for "two counts of dealing cocaine," and his convictions for "operating a vehicle while intoxicated, disregarding a lighted signal and speeding." Record at 67. Prior to trial, Green filed a motion in limine wherein he requested that all evidence of his past convictions be deemed inadmissible during trial. The trial court granted Green's motion in limine in part, allowing the State to use only evidence of Green's past convictions for conversion and check deception for purposes of impeaching his testimony. *See* Ind.Evidence Rule 609(a)(2).

5. An August 21, 1999 *South Bend Tribune* article entitled "Crash driver denied lower bond" also noted Green's dealing in cocaine and operating while intoxicated convictions. The article stated that Green had "at least three failure-to-appear-in-court arrests, two disorderly conduct arrests and two resisting arrest charges on his record." Record at 72. On August 21, 1999, the *Elkhart Truth* published an article entitled "Driver's bond not reduced" that further noted Green's failure-to-appear and driving while intoxicated convictions. Record at 73.

6. *See, e.g.,* Record at 581 (prospective juror was acquainted with the victims' family and "[p]robably" would not be willing to give defendant a fair trial); Record at 588 (prospective juror was not sure she could "forget everything" she had "read and seen"); Record at 598–99, 643 (member of venire stated she would have a "real hard time" if alcohol were involved and was concerned that she might remember something outside the evidence since she had "seen a lot on TV"); Record at 638 (prospective juror stated that he may not be able to be impartial and that his "decision would be based on emotion"); Record at 695–96, 717 (venireman stated that he was "[n]ot really" willing to serve on the jury, that he had "different ideas about justice" based upon an Indian belief, and that he could not be impartial because he "believe[d] that an accident was caused, it didn't just happen"); Record at 733–34 (prospective juror "would try to put" the publicity out of her mind but noted "[t]here [was] no way that we can't form an opinion on what we've read"); Record at 734 (venire person noted she had a "soft spot in [her] heart for children" and "sympathy for the family ... on the prayer list at our church"). None of these prospective jurors were seated on the panel.

ty, even though forty-four of the forty-six prospective jurors stated that they had heard of the case); *Brown*, 563 N.E.2d at 105 (trial court did not abuse its discretion where defendant failed to show that jury was unable to set aside preconceived notions and render decision based upon the evidence, although many prospective jurors knew the prosecutor, defense counsel, and one of the police officers involved); *Clemens*, 610 N.E.2d at 240 (trial court did not err in denying motion for change of venue where news coverage reported specific details of defendant's interview with police and coroner's conclusion that the defendant's "accident scenario 'is to be considered absolutely absurd,' " and where trial court on its own motion excused fifteen of the sixty prospective jurors from the panel); *Specht*, 734 N.E.2d at 241 (trial court denial of motion for change of venue was not error where jurors who were unsure of their ability to be impartial were excused and where defendant failed to establish inability of seated jurors to be impartial due to pretrial media coverage). Accordingly, we are unable to say that the trial court abused its discretion when it denied Green's motion for change of venue.[7]

## II.

### *Motion to Suppress*

Green contends that the trial court erred in failing to suppress the statements he made to a police officer while hospitalized for treatment of his injuries immediately following the accident. Green argues that the hospital environment represented a custodial setting and that the questions asked were accusatory rather than general in nature, such that *Miranda* warnings were required prior to the questioning.

A defendant is entitled to the procedural safeguards of *Miranda* only if he or she is subject to a custodial interrogation. *State v. Linck*, 708 N.E.2d 60, 62 (Ind.Ct.App.1999), *trans. denied*. Thus, police officers are not required to give *Miranda* warnings unless the defendant is "both in custody and subject to interrogation." *Id*. However, one need not be placed under formal arrest to be in custody for purposes of *Miranda*. *Id*. Rather, a defendant is deemed to be in custody if his freedom has been significantly deprived or if a reasonable person in the defendant's circumstances would not believe he was free to leave. *Id*. "Interrogation includes both express questioning and words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect" and must include "a measure of compulsion beyond that inherent in custody itself." *Id*. Nevertheless, *Miranda* warnings are not required prior to questioning as part of a general, on-the-scene investigation in a noncoercive atmosphere. *Orr v. State*, 472 N.E.2d 627, 636 (Ind.App.1984), *trans. denied*; *Hatcher v. State*, 274 Ind. 230, 232, 410 N.E.2d 1187, 1189 (1980). Thus, an officer may ask routine questions for the purpose of obtaining basic identifying information without the need for *Miranda* warnings. *See Hatcher*, 274 Ind. at 232–33, 410 N.E.2d at 1189 (statements made by defendant in response to police officer's inquiry as to defendant's date of birth, name and identification, and cause of his gunshot wound, made while defendant was clothed in a hospital gown awaiting treatment, did not require *Miranda* warnings); *Holt v. State*, 178 Ind.App. 631, 635–36, 383 N.E.2d 467,

---

**7.** It must be acknowledged that a defendant faces a virtually insurmountable hurdle when despite clearly prejudicial publicity which has blanketed the community, a prospective juror states that he is able to disregard such bias or predisposition.

470–71 (1978) (defendant's statements to police officer concerning his name, date of birth, and address did not give rise to *Miranda* warnings).

 However, we need not determine whether Green's statements were made during a custodial interrogation such that he should have been given *Miranda* warnings. For this court to review the denial of Green's motion to suppress, he must have also made a specific and timely objection to the evidence to preserve error. *Sturma v. State,* 683 N.E.2d 606, 608 (Ind. Ct.App.1997); *Moss v. State,* 165 Ind.App. 502, 511–12, 335 N.E.2d 633, 634 (1975), *upon rehearing.* The trial court's denial of a motion to suppress is insufficient to preserve error for appeal. *Swanson v. State,* 730 N.E.2d 205, 208 (Ind.Ct.App. 2000), *trans. denied; Sturma,* 683 N.E.2d at 608.

■ The hearing on Green's motion to suppress took place on March 30, 2000, the day before the jury trial was scheduled to begin. During the hearing on the motion to suppress, Green testified that while he could recall some of the questions and corresponding answers that he gave to the officer, he could not remember his response to any questions concerning who was driving the green Oldsmobile at the time of the accident. Officer Starcevich then testified concerning statements made by Green that Robert, an individual Green had just met the day of the accident, was driving the vehicle at the time the accident occurred. The trial court denied the motion to suppress, finding that the police had not focused upon Green as a suspect, and therefore that no custodial interrogation took place. The order denying the motion to suppress did not contain language preserving the error for appeal. *See Swanson,* 730 N.E.2d at 208 (trial court's order stating that "the record has been preserved" made it clear that the defense's challenge to evidence would be preserved without further objection). At trial, Green testified that he made up the story of Robert driving the vehicle and admitted lying to the police. However, Green did not object to the State's questions concerning the statements he made to the officer while being treated for his injuries. Thus, because Green failed to object to the testimony at trial, he has waived this claim of error upon appeal.

The judgment is affirmed.

SHARPNACK, C.J., and MATHIAS, J., concur.