Sarah SELLMER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A04–0303–CR–147.

Court of Appeals of Indiana.

Dec. 23, 2003.

Stephen Gerald Gray, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

This case turns on the issue of whether, and at what point, the appellant was "in custody" prior to her formal arrest. Appellant-defendant Sarah Sellmer appeals her conviction for Possession of Marijuana,

over thirty grams,[1] a class D felony. Specifically, Sellmer contends that the trial court erred in denying her motion to suppress because police officers, who were acting entirely on an anonymous tip, detained and interrogated her and then searched her vehicle without any independent evidence of criminal activity. Concluding that Sellmer was not in custody prior to her consent to the search of the vehicle, we hold that the initial encounter with the police officers and the subsequent search of her vehicle were lawful. We further find that because Sellmer made incriminating statements admitting ownership of the marijuana that was seized from her vehicle during custodial interrogation that violated the rule set forth in *Miranda v. Arizona*,[2] those statements were improperly admitted at trial. However, the statements were harmless error in this circumstance, and we therefore affirm Sellmer's conviction.

### FACTS

On November 19, 2001 at approximately 5:00 p.m., the Noblesville Police Department received an anonymous tip that drugs could be found in a silver Dodge automobile that was parked near the local Supercuts Hair Salon. Acting on this information, Noblesville Police Officer Wade Roberts went to the scene and noticed the vehicle that had been described. He did not know who had supplied the information, how the tipster acquired the facts, or where in the vehicle the drugs might be found.

Officer Roberts and another policeman, who was driving a separate police cruiser, both parked near the Dodge. The parking spots of the two police cars were separated from the Dodge by a sidewalk that was located near the Supercuts. As Officer Roberts approached the vehicle, he saw two women exit the Dodge and enter the salon.

When Officer Roberts went inside, he observed Sellmer, who had been in the driver's seat, in the customer waiting area completing some paperwork. He also noticed that the passenger in the vehicle was cutting another individual's hair. Officer Roberts asked Sellmer if she owned the vehicle, and, when she answered that she did, he asked her to step outside the salon so they could talk further. Once outside, Officer Roberts advised Sellmer of the anonymous report that was made to the police department, and she denied that there were any drugs in the car. Officer Roberts then asked Sellmer if he could search the vehicle, and she responded unequivocally that he could because she had nothing to hide. Up to the time of conducting the search, Sellmer had not been "Mirandized," and she was not told that she had the right to counsel before consenting to the search.

When Officer Roberts opened the driver's side door, he discovered a plastic baggie with a small amount of a green leafy substance that was subsequently determined to be marijuana. Officer Roberts asked Sellmer if she "knew anything about this?" Tr. p. 28. Sellmer responded, "Yes, that's mine." Tr. p. 28. Continuing the search in the backseat area of the car, Officer Roberts seized a large brick of a substance that also tested positive for marijuana. He then held up the brick and asked Sellmer what she knew about it. Sellmer stated, "Yes, that would be mine also." Tr. p. 30.

Sellmer was then formally arrested and charged with the above offense. On May

---

**1.** Ind.Code § 35–48–4–11(1).

**2.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

29, 2002, Sellmer filed a motion to suppress, arguing that the detention and subsequent search of her vehicle, along with any incriminating statements she made to Officer Roberts, violated the Fourth and Fifth Amendments of the United States Constitution and Article I, section 11 of the Indiana Constitution. Following a hearing, the trial court denied Sellmer's motion to suppress on August 15, 2002. Thereafter, a trial by court was held on January 23, 2003, and Sellmer was found guilty as charged. She now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In addressing the claims that Sellmer presents today, we note that a trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Goodner v. State*, 714 N.E.2d 638, 641 (Ind. 1999). Additionally, a trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency of the evidence. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Rather, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted. *State v. Glass*, 769 N.E.2d 639, 641 (Ind.Ct.App.2002), *trans. denied.* If we find sufficient evidence of probative value to support the denial of the motion to suppress, the decision of the trial court will be upheld. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997).

### II. Sellmer's Claims

#### A. Initial Encounter and Alleged Detention

Sellmer first contends that the evidence should have been suppressed because she was detained and questioned without legal justification. Specifically, Sellmer argues that the initial encounter with the Noblesville police amounted to an unlawful investigative stop that eventually became custodial. Appellant's Br. p. 8.

In addressing this issue, we note that a person is not seized within the meaning of the Fourth Amendment by police officers merely approaching an individual in a public place and asking if the person is willing to answer questions, or by offering into evidence in a criminal prosecution the voluntary answers to those questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Whether the "detention" of a suspect occurs turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business. *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003) (citing *California v. Hodari.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). To characterize every street encounter between a citizen and the police as a seizure, while not enhancing any interest guaranteed by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Although the individual is not obligated to listen to the questions or to answer them, if he does so he is not detained. *Royer*, 460 U.S. at 497, 103 S.Ct. 1319.

We note that in *Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984), the evidence established that a police officer stopped a suspect who appeared to be fleeing, and asked him to move approximately fifteen feet away to where another officer was standing with the suspect's two cohorts. The United States Supreme Court determined that

"the initial contact between the officer and respondent, where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest." *Id.* at 6–7, 105 S.Ct. 308. Following this rationale, in *Molino v. State,* 546 N.E.2d 1216 (Ind.1989), the police approached the defendant to question him at the airport after he deplaned from a flight often used by drug smugglers. He had attempted to leave the airport without claiming any luggage. During questioning and a consensual search of his handbag, the defendant became nervous and eventually confessed to possessing drugs. It was ultimately determined that the police had not seized the defendant by asking him for identification and asking him a few questions. *Id.* at 19, 105 S.Ct. 308. *See also Knowles v. State,* 571 N.E.2d 1308, 1311 (Ind.Ct.App.1991) (holding that no seizure occurred when the defendant voluntarily accompanied airport authorities to their office and consented to an examination of his carry-on bag by a drug-detection dog).

■ In this case, Sellmer has failed to show that she did anything but voluntarily choose to speak with Officer Roberts at the salon. While Sellmer devotes a section of her argument to the notion that the marijuana should have been suppressed because the police acted improperly after receiving the anonymous tip, no arrest was made and no search was conducted based upon this information. Rather, the evidence demonstrated that Sellmer acknowledged to Officer Roberts that she owned the Dodge. Sellmer then voluntarily accompanied him outside the hair salon. Tr. p. 16. Officer Roberts testified that he requested Sellmer to step outside in order to save her the possible embarrassment of having to discuss the report of drugs in her car in public. Tr. p. 17. There is

simply no evidence that the police officers forced Sellmer outside or otherwise restricted her freedom of movement at that point. To the contrary, the record demonstrates that Sellmer chose to leave the salon with Officer Roberts—seemingly in an effort to cooperate with the investigation. Therefore, Sellmer's argument that the marijuana should have been suppressed because the initial encounter with Officer Roberts was unlawful, must fail.

## B. Search of the Vehicle

Our inquiry continues, as Sellmer goes on to argue that her consent to search the vehicle was not voluntary. Specifically, Sellmer maintains that the trial court erred in denying her motion to suppress because any "consent to search was tainted by an initial illegal custody and the failure to give the *Pirtle*[3] advisement to the right to counsel before consenting." Appellant's Br. p. 7.

■ Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Perry v. State,* 638 N.E.2d 1236, 1240 (Ind.1994). In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Short v. State,* 443 N.E.2d 298, 303 (Ind.1982). A valid consent is such an exception. In turn, a consent to search is valid except where it is procured by fraud, duress, fear or intimidation or where it is merely a submission to the supremacy of the law. *Martin v. State,* 490 N.E.2d 309, 313 (Ind. 1986). The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Callahan v. State,* 719 N.E.2d 430, 435 (Ind.Ct.App.1999).

3. *Pirtle v. State,* 263 Ind. 16, 323 N.E.2d 634  (1975).

In *Pirtle,* our supreme court held that a person who is asked to give his consent to a search while in police custody is entitled to the presence and advice of counsel prior to making his decision. *Pirtle,* 323 N.E.2d at 640; *see also Kubsch v. State,* 784 N.E.2d 905, 918 (Ind.2003). While that right may be waived, the burden is on the State to show that such waiver was explicit. *Pirtle,* 323 N.E.2d at 640. However, these *Miranda* safeguards do not attach unless "there has been such a restriction on a person's freedom as to render him in custody." *Kubsch,* 784 N.E.2d at 917 (quoting *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind.1995)). Moreover, the *Miranda* warnings are not required unless the defendant is both in custody and subject to interrogation. *Green v. State,* 753 N.E.2d 52, 58 (Ind.Ct. App.2001), *trans. denied.*

Although we have determined that Sellmer was not unlawfully detained during the initial encounter with Officer Roberts, she goes on to argue that she was in police custody when Officer Roberts requested her consent to search. Therefore, Sellmer contends that her consent to the search was invalid because the *Miranda* warnings were not given.

To determine whether a defendant is in custody, this court applies an objective test asking whether a reasonable person under the same circumstances "would believe themselves to be under arrest or not free to resist the entreaties of the police." *Kubsch,* 784 N.E.2d at 917. Moreover, a person is not in custody where he is unrestrained and has no reason to believe he could not leave. *Id.*

Despite Sellmer's assertions, there is no evidence establishing that she was in custody when Officer Roberts asked if he could search the vehicle. Nothing in the record indicates a "threatening presence" of the officers—nor did they display their weapons. Additionally, Officer Roberts did not touch, push, or otherwise restrain Sellmer during the initial encounter leading up to the search. Moreover, the record is devoid of any suggestion that Officer Roberts's tone of voice might have compelled Sellmer to comply with his request to search the vehicle. While Sellmer may have initially hesitated prior to giving permission to search, she ultimately agreed to allow Officer Roberts to conduct the search. In these circumstances, we conclude that Sellmer had no reason to believe that she was under arrest or in custody at the time she permitted Officer Roberts to search the vehicle. As a result, the *Miranda* warnings were not required. Moreover, there was no evidence of coercion or intimidation by the police officers. We therefore find that Sellmer voluntarily consented to the search. Thus, there was no error on this basis.

### C. Statements Made During the Search

As a final issue, Sellmer contends that the statements she made to Officer Roberts following the search of the vehicle should have been suppressed. Specifically, Sellmer argues that her admissions that the marijuana was hers was improperly admitted at trial because those statements were the result of a custodial interrogation and she had not been advised of her *Miranda* rights prior to the questioning.

In resolving this issue, we note that a defendant is entitled to the procedural safeguards of *Miranda* only if he or she is subject to a custodial interrogation. *White v. State,* 772 N.E.2d 408, 412 (Ind.2002). Once again, a defendant is deemed to be in custody if his freedom has been significantly deprived or if a reasonable person in the defendant's circumstances would not believe that he or she was free to leave. *Id.*

In this case, the following exchange occurred between Officer Roberts and Sellmer's counsel during cross-examination at trial:

> DEFENSE COUNSEL: Well, certainly while you were conducting the search and earlier neither the male subject nor Sarah Sellmer are just free to go about their business. They have to remain on the scene. Exactly. Correct? That's what you said [in your deposition]?
>
> OFFICER ROBERTS: Well, at that point while conducting the search I had already found marijuana so they were not free to go.

Tr. p. 55–56.

The evidence showed that once Officer Roberts seized the first bag of marijuana and held it up for Sellmer to see, Officer Roberts unequivocally testified that Sellmer was not free to leave. Tr. p. 56. It is undisputed that Officer Roberts began interrogating Sellmer about the ownership of the marijuana without advising Sellmer of the *Miranda* warnings. Such questioning was designed to elicit incriminating responses from Sellmer. Specifically, when Officer Roberts displayed the marijuana to Sellmer after recovering it from the vehicle, he immediately asked, "Do you know anything about this?" Tr. p. 57. Sellmer then replied that the drugs were hers. Tr. p. 57.

In *State v. Linck*, 708 N.E.2d 60 (Ind.Ct. App.1999),[4] this court was confronted with circumstances similar to those presented here. In that case, a police officer was dispatched to the defendant's residence to investigate a complaint of illegal drug use. The officer told Linck of the complaint and also commented that he smelled the odor of burning marijuana. The officer then asked Linck "what the problem was," and Linck responded that he had "just smoked a joint." *Id.* at 61. The officer then asked him if "there was anything left or if there was any more." *Id.* Linck answered that there was and immediately retrieved a bag of marijuana from the refrigerator. Thereafter, the police officer continued to question Linck and elicited further admissions from him. *Id.* at 62. On appeal, we affirmed the trial court's grant of Linck's motion to suppress, holding that the statements made in response to questioning after Linck admitted to "smoking a joint" were inadmissible because custodial interrogation had taken place. *Id.* at 63. This court observed as follows:

> [W]e agree with the trial court that a reasonable person would not have felt free to leave. Thus, Linck was in custody for purposes of *Miranda* after he admitted smoking the marijuana. At that point, the officers were required, but failed, to advise Linck of his *Miranda* warnings before they questioned him further. Therefore, any statements made by Linck after he admitted smoking the marijuana, should have been suppressed.

*Id.*

Like the circumstances in *Linck*, Sellmer was told that she was suspected of drug possession and was shown actual marijuana that had been seized from her vehicle. Officer ■ Roberts then propounded questions to her regarding the ownership of the marijuana. As in *Linck*, because the record here demonstrates that Sellmer was questioned when she was in custody—as was evidenced by Officer Roberts's own testimony—and was not advised of the *Mi-*

---

4. Our supreme court originally granted transfer in this case, but it subsequently vacated that order upon further review and after hearing oral argument. *See State v. Linck*, 716 N.E.2d 892 (Ind.1999).

*randa* warnings, her statements admitting ownership of the marijuana should have been suppressed. In essence, Officer Roberts should have known that his questions could lead to a response that was reasonably likely to be useful to the prosecution at trial.

That said, even though Sellmer's statements may have been improperly admitted at trial, she is not entitled to a reversal. Our supreme court has determined that "violations of *Miranda* are subject to harmless error analysis." *Rawley v. State*, 724 N.E.2d 1087, 1090 (Ind.2000). To constitute harmless error, the conviction must be:

> supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction.... The court must find that the error did not contribute to the verdict, that is, that the error was unimportant in relation to everything else the jury considered on the issue in question.

*Morales v. State*, 749 N.E.2d 1260, 1267 (Ind.Ct.App.2001).

In this case, the State presented independent evidence of Sellmer's guilt, absent her statements that the marijuana was hers. Specifically, it was established that she was the registered owner of the silver Dodge. Moreover, Officer Roberts testified that the marijuana had been recovered from Sellmer's vehicle, and Sellmer never denied that the drugs were hers. In fact, Sellmer did not present any evidence at trial. In our view, we consider Sellmer's statements merely cumulative evidence, and the trial court's admission of them was harmless error. *See Wright v. State*, 766 N.E.2d 1223, 1232 (Ind.Ct.App. 2002). As a result, Sellmer's conviction for possession of marijuana may stand.

The judgment of the trial court is affirmed.

BROOK, C.J., and SHARPNACK, J., concur.