James E. PEEL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 54A01–0610–CR–452.

Court of Appeals of Indiana.

June 22, 2007.

Stephen Gerald Gray, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant James E. Peel brings this interlocutory appeal challenging the trial court's denial of his motion to suppress marijuana found in his motel room. Specifically, Peel argues that the motion should have been granted because the police officers' search of his motel room was illegal, inasmuch as Peel and his roommate were in custody and were not informed of their right to counsel before police obtained consent to search. Hence, Peel argues that his roommate's consent to the search was invalid and that his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution was violated. Concluding that Peel and his roommate were in custody when the police officers allegedly obtained consent to search the room and that the men had not been advised of their *Miranda* [1] rights before allowing the police to search, we reverse the judgment of the trial court.

## *FACTS*

On December 18, 2005, five Crawfordsville police officers were dispatched to the Ramada Inn in Montgomery County after a motel employee called and complained about an odor of marijuana emanating from one of the rooms. When the officers arrived, they traced the odor to a specific room and confirmed their suspicions after a canine unit "indicated" the presence of marijuana. Tr. p. 5. Officer Jared Colley knocked on the door, and Peel eventually opened it. When Officers Julian Huckstep and Colley entered the room, they noticed another individual, James Capps, sitting on one of the beds. Officer Colley informed Peel about the nature of the complaint and asked him if they had been smoking marijuana in the room. Peel admitted that they had, but he told the officers that "there was nothing left." *Id.* at 7.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At that point, the officers directed Peel and Capps to the hallway. Peel and Capps were not handcuffed at that point, and the officers had not formally placed them under arrest. However, the officers acknowledged that neither Peel nor Capps were "free to wander off" because the officers intended to check for outstanding arrest warrants. *Id.* at 51.

Officer Huckstep spoke with Peel, and Officer Colley questioned Capps. Officer Colley and Capps walked "a couple of doors to the south," while Peel and Officer Huckstep were "just outside the room." *Id.* at 20–22. At some point, Officer Huckstep asked for—and received—permission from Peel to search two duffle bags that were in the room. Nothing was discovered in the bags. In response to questioning, Capps admitted to Officer Colley that he and Peel had been smoking marijuana in the room. After additional questioning, Capps told Officer Colley that he had hidden a bag of marijuana in the sheets of each bed as the officers knocked on the door. Capps also told Officer Colley that the marijuana was "both of theirs." *Id.* at 40–41. Officer Colley then asked Capps if the police could search the room, and Capps responded that they could. As a result of the search, the marijuana was discovered in the beds. In response to additional questioning, Capps told the officers that there was a "joint" near the nightstand, which was subsequently seized. *Id.* at 43. The police officers also found some rolling papers in the room.

Peel was charged with possession of marijuana, possession of paraphernalia, and an allegation that he was a habitual substance offender. Thereafter, on April 11, 2006, Peel filed a motion to ·suppress the evidence, claiming that the deputies had "seized the defendant ... and searched defendant's room, questioned the defendant, all in violation of the 4th, 5th and 6th Amendments of the United States Constitution, and Article 1, Section 11 of the Indiana Constitution." Appellant's App. p. 25. In part, Peel maintained that

> the separation of Capps and Peel provided Officer Colley with an opportunity to question Capps privately and obtain Capps' consent without Peel's knowledge or objection. Thus, Peel was prevented from objecting to a search of his bed or the common nightstand because Peel was never informed of Capps' consent or what the officers were planning to do. Here, ironically, Capps' consent was hidden from Peel. Therefore, it was not reasonable to believe that Capps had actual or apparent authority to consent to the search of the common nightstand.

Appellant's App. p. 40–41.

Following a hearing, the trial court denied Peel's motion to suppress on August 8, 2006. In relevant part, the trial court's order provided as follows:

> Peel concedes that Capps had actual authority to consent to the search of Room 125, but contends that Capps had no authority to consent to the search of Peel's bed. Peel argues that *Krise v. State*, 746 N.E.2d 957 (Ind.2001), applies to these facts. His argument is based on the premise that a bed is analogous to a container, i.e., "[a] bed is a closed container that normally holds at least one highly personal item ..." Defendant's Brief, p. 9. Assuming that Peel did have an actual, subjective expectation of privacy in his own bed, and assuming that by separating the co-defendants the police deprived Peel of any opportunity to object to any search authorized by Capps, and assuming that Peel was in fact in custody after admitting he had smoked marijuana, the evidence in this case nonetheless fails to support Peel's constitutional claims. Before opening the door to the police,

Capps hid bags of marijuana that belonged to both defendants in both of their beds. To the extent that Peel contends constitutional exclusivity in his bed, his claim is vitiated by Capps's free access to that bed to hide the incriminating evidence. These circumstances distinguish this case from *Halsema v. State*, 823 N.E.2d [668] 688 (Ind.2005), and *Krise v. State, supra.*

*Id.* at 19–20. Thereafter, on August 22, 2006, Peel filed a subsequent motion to suppress. In relevant part, Peel alleged that

2. The issues raised by Peel in his first motion were limited narrowly to Peel's expectation of privacy and the ability of a third party to consent to a search of areas Peel considered private.

3. An issue specifically not raised by Peel at that time was any challenge to the *voluntariness* of the third party consent. Peel's counsel asserted that Peel *did not* have standing to challenge that consent of the search of his co-occupant's bed because Peel lacked an expectation of privacy in someone else's bed. Peel does not contend otherwise now.

4. The issue not addressed in Peel's first motion is his standing to challenge the voluntariness of a third party consent *in areas in which he has a clear expectation of privacy.* Peel contends that he does indeed have standing and raises this specific issue herein.

5. Defendant does not seek any further evidentiary hearing as the initial suppression hearing sufficiently addresses any necessary facts for the court to consider this issue.

*Id.* at 27 (emphases in original). The trial court subsequently denied this motion and certified both rulings for interlocutory appeal. We accepted jurisdiction of the appeal on December 4, 2006.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that the standard of review on the admissibility of the evidence is essentially the same for a motion to suppress or an objection to the admission of evidence at trial. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App. 2005), *trans. denied.* We will not reweigh the evidence, and we consider the conflicting evidence most favorable to the trial court's ruling. *Id.* However, we will also consider any uncontested evidence in favor of the nonmovant. *Id.* We will affirm the decision if it is supported by substantial evidence of probative value. *Id.*

### II. Peel's Claims

Peel contends that the trial court erred in denying his motion to suppress because the police officers illegally searched his bed and nightstand "with the tainted consent of a third party." Appellant's Br. p. 1. Peel also maintains that the evidence should have been suppressed because Capps's consent to search the motel room was not voluntary.

We initially observe that the Fourth Amendment to the United States Constitution generally prohibits warrantless searches. *Edwards v. State*, 762 N.E.2d 128, 132 (Ind.Ct.App.2002). The purpose of the Fourth Amendment to the United States Constitution is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Barfield v. State*, 776 N.E.2d 404, 406 (Ind.Ct.App.2002). If a warrantless search is conducted, the burden is on the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Id.* That is,

searches conducted without a warrant are per se unreasonable, subject to a few well-delineated exceptions. *Johnson v. State,* 766 N.E.2d 426, 432 (Ind.Ct.App.2002).

We note that hotel guests enjoy the same constitutional protection against unreasonable search and seizure as do occupants of private residences. *Norwood v. State,* 670 N.E.2d 32, 35 (Ind.Ct.App.1996). An occupant of a motel room has standing to challenge a search even when he or she has not paid for the room. *Ceroni v. State,* 559 N.E.2d 372, 373 (Ind.Ct.App. 1990). In *Tate v. State,* 835 N.E.2d 499, 506 (Ind.Ct.App.2005), *trans. denied,* this court recognized that the defendant, "as a registered guest of the motel, undoubtedly had proper authority to consent to a search of his room."

Pursuant to the Indiana Constitution, the focus is on whether the police acted reasonably under the circumstances. Thus, "the purpose of Article [I], section 11 is to protect from unreasonable police activity, those areas of life that Hoosiers regard as private." *Moran v. State,* 644 N.E.2d 536, 540 (Ind.1994). This court considers, as the trial judge must, each case on its own facts to decide whether the police behavior was reasonable. The provisions must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Brown v. State,* 653 N.E.2d 77, 79 (Ind. 1995). The validity of a search by law enforcement officers turns on an evaluation of the reasonableness of officer conduct under the totality of the circumstances. *State v. Keller,* 845 N.E.2d 154, 169 (Ind.Ct.App.2006). It is the State's burden to show that under the totality of the circumstances, the police officers' in-

trusion was reasonable. *State v. Gerschoffer,* 763 N.E.2d 960, 965 (Ind.2002).

### A. Consent to Search—Generally

One exception to the warrant requirement occurs when consent is given to the search. *Sellmer v. State,* 842 N.E.2d 358, 362 (Ind.2006). A valid consent to search may be given by the person whose property is to be searched or a third party who has common authority or an adequate relationship to the premises to be searched. *Norris v. State,* 732 N.E.2d 186, 188 (Ind.Ct.App.2000). When showing that a third party has authority to consent, the State must demonstrate mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that "any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

While a defendant typically is without standing to challenge the voluntariness of a third party's consent, an individual may do so when that consent involves an area in which the defendant held a reasonable expectation of privacy. *Livermore v. State,* 777 N.E.2d 1154, 1158 (Ind.Ct.App.2002).[2] Also, a third party may consent to the search of the premises or property of another if actual authority exists. *Id.* at 171, 94 S.Ct. 988. Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. However, if actual authority cannot be shown, then facts demon-

---

**2.** The State does not argue that Peel lacked standing to challenge the validity of Capps' consent to search the room.

strating that the consenting party had apparent authority to consent could prove a lawful search. *Krise v. State*, 746 N.E.2d at 967. Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would warrant a man of reasonable caution to believe that the consenting party had authority over the property. *Id.* However, our Supreme Court has observed that persons sharing premises may nonetheless retain areas or objects within their *exclusive control* that are not subject to search based on consent of one of the co-occupants. *Lee v. State*, 849 N.E.2d 602, 608 (Ind.2006). A co-occupant may deny joint access over an object by keeping it in a place devoted to the owner's exclusive use or where the object is one over which only one person normally exercises control and authority or which "normally hold[s] highly personal items." *Id.*

In considering whether Capps had the authority to consent to the search of the motel room, it is undisputed that Capps and Peel shared the room. Thus, they both had joint access to and mutual use of the room, including the beds and fixtures located therein. Thus, Peel assumed the risk that Capps would permit a search of the room, and Peel may challenge the propriety of the search. *See Matlock*, 415 U.S. at 170, 94 S.Ct. 988.

### B. Capps's Consent

In this case, Peel maintains that the consent to search the hotel room was invalid because he and Capps were in custody when the police officers obtained their permission to search. Thus, Peel claims that because neither he nor Capps

were informed of their right to counsel under *Miranda* before the alleged consent to search was obtained, his motion to suppress should have been granted.[3]

The police officers admitted at the suppression hearing that neither Capps nor Peel were informed of a right to consult with counsel before the consent to search was obtained. The record is also devoid of evidence establishing that either Peel or Capps had the right to refuse to give their consent to search. *Id.* at 25, 26. Therefore, we turn to our Supreme Court's decision in *Sellmer* for guidance on this issue:

Indiana law on consent given while in custody derives from *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975). The defendant in that case was under arrest for possession of a stolen automobile. The police read *Miranda* rights to him in the squad car and again at the police station. Pirtle did not waive his rights either time and requested to speak to an attorney when questioned at the station. Though counsel was not provided, approximately 12 hours later two other officers questioned Pirtle again and one asked for permission to search his apartment, which he authorized. The police searched the apartment and discovered witnesses and direct evidence linking Pirtle to a homicide.

Pirtle challenged admission of that evidence, and we held that "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." *Id.* at 640. Because *Pirtle* was not afforded counsel after he requested it, he "could have no conception of the

---

**3.** While the State maintains that Peel has waived the argument as to whether Capps' consent was voluntary, the record reflects that Peel argued the issue of the voluntariness of Capps' consent to search those areas in

which Peel held an expectation of privacy. Moreover, as noted above, Peel filed a separate brief with the trial court on August 22, 2006, wherein this issue was specifically addressed.

extent of his Fourth Amendment rights." *Id.* *Sims v. State,* 274 Ind. 495, 413 N.E.2d 556, 559 (1980), *made clear that Pirtle requires that a person in custody be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given.*

*Sellmer,* 842 N.E.2d at 362–63 (emphasis added).

■ Here, because Peel contends that he and Capps were entitled to receive a warning about consultation with counsel before consenting to the search of the room, we must determine whether the right to receive that warning had attached. This right can only be said to have attached if Capps was in custody when he consented to the search of the room. *Id.* at 363.

■ As was further observed in *Sellmer:*

We determine whether a person is "in custody" by applying an objective test asking whether a reasonable person under the same circumstances would believe that [he or] she was under arrest or not free to resist the entreaties of the police. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389, (1991); *Jones [v. State],* 655 N.E.2d [49] at 55 & n. 4 [ (Ind.1995) ] (observing that "Justice O'Connor aptly pointed out in *Bostick* [that] the objective test is that of a reasonable innocent person").

■ Additionally, in order to be in custody for purposes of *Miranda,* one need not be placed under formal arrest. *Thompson v. State,* 692 N.E.2d 474, 476 (Ind.Ct.App.1998). Rather, the determination is based upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in the accused's circumstances would believe that he is not free to leave. *Cliver v. State,* 666

N.E.2d 59, 66 (Ind.1996). The determination involves an examination of all the objective circumstances surrounding the interrogation. *State v. Linck,* 708 N.E.2d 60, 62 (Ind.Ct.App.1999).

As noted above, both Capps and Peel admitted to the police officers that they had been smoking marijuana in the motel room. Tr. p. 10, 40. Specifically, Officer Colley testified that

Mr. Capps ... admitted that they had both been smoking marijuana and as I stated earlier, that had been brought up for marijuana, and he did explain to me where at in the room the marijuana was at. He even admitted to hiding the marijuana under both beds prior to, or as we made contact at the doorway, as we knocked on the doorway.

*Id.* at 40. Before the officers searched the room, Officer Colley asked for Capps's consent to search, and Capps' reply was "sure, you can go in." *Id.* at 44. After Peel admitted to smoking marijuana in the room, he allegedly gave the officers permission to search the duffel bags. Officer Colley further testified that neither Capps nor Peel were told they were under arrest prior to the search, and they were not handcuffed. *Id.* at 45. However, Officer Colley expressly acknowledged that neither Peel nor Capps were advised of their right to counsel before consent to search was sought, and neither individual requested the presence of an attorney during questioning. *Id.* at 45–46. Moreover, the evidence unequivocally established that five police officers and a canine unit were present at the motel, and Officer Colley testified that neither Capps nor Peel was "free to wander off." *Id.* at 51. Finally, the record establishes that the officers asked Capps incriminating questions immediately after Capps had admitted that he had committed a criminal offense. Thus, when examining the totality of the

circumstances, a reasonable person under the same circumstances as those in which Capps and Peel found themselves would believe that they were either under arrest or "not free to resist the entreaties of the police." *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382.

As further support for this conclusion, we find this court's opinion in *State v. Linck*, 708 N.E.2d 60 (Ind.Ct.App.1999) instructive. The evidence in *Linck* established that two police officers were dispatched to the defendant's apartment to investigate a complaint of illegal drug use. *Linck*, 708 N.E.2d at 61. After the officers smelled what they believed to be burning marijuana, one of them knocked on Linck's door. Linck answered and permitted the officers to enter. One of the officers informed Linck of the complaint they had received and asked Linck "what the problem was" in reference to the illegal drug activity or odor. Linck responded that he had "just smoked a joint." *Id.* at 61. Based on that response, the officer then asked Linck if "there was anything left or if there was any more." *Id.* Linck answered "yes" and proceeded to retrieve a bag of marijuana from the refrigerator. *Id.* at 61–62. After the officer took possession of the marijuana, he asked Linck "if that was all," to which Linck responded that there was additional marijuana in the bedroom. *Id.* at 62. Another officer followed Linck into the bedroom and seized another bag containing 3.2 grams of marijuana.

Linck was charged with possession of marijuana, and subsequently filed a motion to suppress the drugs and the statements he made immediately prior to his arrest. Specifically, Linck argued that because the officers had failed to advise him of his *Miranda* rights prior to conducting custodial interrogation, his statements and the marijuana were unlawfully obtained. The trial court granted the motion, and the State appealed. In affirming the grant of the motion to suppress, we observed that

> Without reweighing the evidence or the credibility of the witnesses, and viewing the evidence in the light most favorable to the trial court's ruling, we find that the trial court properly concluded that the officer's questions amounted to interrogation. At the suppression hearing, Officer Hudson testified that, before he asked Linck the first question of "what the problem was," he had already advised Linck that he had received a complaint of illegal drug activity, that he believed that the illegal activity had been occurring and that he had smelled burning marijuana. Officer Hudson further testified that he asked this question specifically "in reference to the illegal drug activity or odor." Record at 69–70. Under these circumstances, Officer Hudson should have known that his question was reasonably likely to elicit an incriminating response. Therefore, the question amounted to interrogation. We similarly conclude that the remaining two questions, regarding the possible existence of additional amounts of marijuana, also constituted interrogation. When Officer Hudson asked Linck if "there was anything left or if there was any more," Linck had just admitted smoking a joint. Further, immediately before Officer Hudson asked Linck "if that was all," Linck had just retrieved the first bag of marijuana, containing 28.2 grams of marijuana from the refrigerator. Record at 70, 71. These questions clearly were likely to elicit an incriminating response in regard to the presence and location of marijuana. In fact, because the officers obtained the second bag of marijuana, the prosecutor was able to elevate Linck's charge from a Class A misdemeanor to a Class D felony. Therefore, we cannot say that

the trial court erred by concluding that Officer Hudson's questions amounted to interrogation.

. . .

The record reveals that Linck was not formally arrested until after the second bag of marijuana had been seized. The State contends that it was only at that point in time that Linck was in custody for purposes of *Miranda*. *However, Linck contends, as the trial court concluded, that he was in custody after he admitted smoking the joint because a reasonable person would not have felt free to leave following that admission. We agree.*

By informing the officers that he had just smoked the marijuana, Linck admitted to engaging in illegal activity, confirming the officers' suspicions and the original complaint. Further, immediately before Linck made this admission, the officers had smelled burning marijuana both in the hallway and in Linck's apartment. At no time did the officers inform Linck that he was free to leave. As a result, we agree with the trial court that a reasonable person would not have felt free to leave. Thus, Linck was in custody for purposes of *Miranda* after he admitted smoking the marijuana. At that point, the officers were required, but failed, to advise Linck of his *Miranda* warnings before they questioned him further. Therefore, any statements made by Linck after he admitted smoking the marijuana, should have been suppressed.

*Id.* at 62–63 (emphasis added).

When considering the above, we can only conclude that Peel and Capps were in custody for purposes of *Miranda* after admitting that they had committed a criminal offense. Thus, for a consent to search to be valid, they were entitled to an advisement of the right to counsel before a valid consent to search the motel room could be obtained. Inasmuch as the record unequivocally establishes that no such advisements were given, the trial court erred in denying Peel's motion to suppress.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.[4]

FRIEDLANDER, J., and CRONE, J., concur.

---

**4.** Because we have concluded that the search was improper in light of the police officers' failure to advise Peel and Capps of their right to counsel before obtaining consent to search the motel room, we need not address Peel's claim that Capps was only authorized to search the common areas of the room, which necessarily excluded the bed where Peel slept.