## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 25 2017, 9:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matthew B. Bakewell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 25, 2017

Court of Appeals Case No.
20A05-1603-CR-705

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1406-FB-61

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Matthew B. Bakewell (Bakewell), appeals his conviction for dealing in methamphetamine, a Class B felony, Ind. Code § 35-48-4-1.1(a)(1)(A); and possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11(1).

We affirm.

# ISSUE

Bakewell presents us with one issue on appeal, which we restate as: Whether the trial court abused its discretion by admitting evidence obtained pursuant to a warrantless search.

# FACTS AND PROCEDURAL HISTORY

On June 6, 2014, Elkhart County Sheriff's Deputy Bob Smith (Officer Smith) received a tip from an unidentified member of the Drug Unit that someone was manufacturing methamphetamine in room 124 of the Day Lite Inn, located in Elkhart County, Indiana. Officer Smith, together with his trainee Elkhart County Sheriff's Deputy Eric Dilley (Officer Dilley), responded to the tip. Upon arrival at the Day Lite Inn, the officers first stopped at the front desk to determine the identity of the current resident in room 124. The manager informed them that the room had been rented to and paid for by Lonna Gillison (Gillison).

[5] When the officers arrived at room 124, Officer Smith knocked on the door several times. Neither officer noticed any unusual odor emanating from the room. After several repeated attempts knocking on the door, a female voice from inside the room inquired who was there. Officer Smith announced, "Sheriff's Department." (Transcript pp. 19-20). The window curtain moved and a woman looked out at the officers. After she shut the curtain, the officers could hear the woman talking to someone inside the hotel room. Shortly thereafter, the woman, later identified as Gillison, opened the door. Officer Smith introduced himself and asked if he "could step into the room to talk to the people inside." (Tr. p. 24). Gillison replied, "Yes," and stepped aside for the officers to enter. (Tr. p. 24). Upon entering, the officers noticed a male, later identified as Bakewell, sitting on one of the beds in the room. Officer Smith explained that they were following up on an "anonymous tip that drug use was going on" in the room. (Tr. p. 26). While talking, Officer Smith noticed "a bud of what" the officer believed to be marijuana sitting on a nightstand in between the two beds. (Tr. p. 27). Officer Smith did not mention that he had seen the marijuana, nor did he place Bakewell and Gillison under arrest.

[6] Officer Smith asked Gillison and Bakewell for their consent to search the room. They both agreed to the request. Officer Smith walked around the room and asked if he could look under the bed Bakewell was sitting on. Again, both consented. Bakewell "even stood up and moved from the bed[.]" (Tr. p. 29). Officer Smith picked up the mattress and noticed numerous baggies, as well as

a coffee filter that contained a white substance believed to be methamphetamine. At this point, Officer Smith read the *Pirtle* warnings to Bakewell and Gillison, and asked again for permission to search the room. "Bakewell would not respond whether he would give consent to search the rest of the room[.]" (Tr. p. 31). Officer Smith called for backup to secure the room while he applied for a search warrant. The search warrant was granted later that night. A subsequent search of the hotel room revealed numerous items used in the manufacturing of methamphetamine. When confronted with the evidence, Bakewell admitted to having manufactured methamphetamine the night before but added that he had not been planning on manufacturing methamphetamine that night.

[7] On June 11, 2014, the State filed an Information, charging Bakewell with Count I, dealing in methamphetamine, a Class B felony; Count II, possession of methamphetamine, a Class D felony; and Count III, possession of marijuana, a Class A misdemeanor. On May 29, 2015, Bakewell filed a motion to dismiss the evidence discovered pursuant to a warrantless search. On October 16, 2015, following a hearing, the trial court denied the motion. On December 2, 2015, the trial court conducted a bench trial. At the close of the evidence, the trial court took the matter under advisement. On January 19, 2016, the trial court entered an order finding Bakewell guilty on Count I and III, and not guilty on Count II. On March 15, 2016, the trial court sentenced Bakewell to thirteen years of imprisonment for dealing in methamphetamine

and one year for possession of marijuana, with both Counts to be served concurrently and five years suspended to probation.

[8]     Bakewell now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[9]     Bakewell contends that the trial court abused its discretion in admitting the evidence discovered as a result of the warrantless search of the hotel room. The State argued, and the trial court agreed, that no Fourth Amendment violation occurred since the officers obtained a voluntary consent to enter and search the hotel room. The standard of review for admissibility of evidence is an abuse of discretion. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011), *trans. denied*. The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id*. Even when the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id*.

[10]    The Fourth Amendment to the United States Constitution generally prohibits warrantless searches. *Peel v. State*, 868 N.E.2d 569, 574 (Ind. Ct. App. 2007). The purpose of the Fourth Amendment is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Id*. If a warrantless search is conducted, the burden is on the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Id*.

That is, searches conducted without a warrant are *per se* unreasonable, subject to a few well-delineated exceptions. *Id*. at 575.

[11] Hotel guests enjoy the same constitutional protection against unreasonable search and seizure as do occupants of private residences. *Id.* An occupant of a motel room has standing to challenge a search even, where, as here, he[1] or she has not paid for the room. *Ceroni v. State*, 559 N.E.2d 372, 373 (Ind. Ct. App. 1990), *trans. denied*.

[12] One exception to the warrant requirement occurs when consent is given for the search. *Sellmer v. State*, 842 N.E.2d 358, 362 (Ind. 2006). The theory underlying the exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Buckley v. State*, 797 N.E.2d 845, 849 (Ind. Ct. App. 2003). When seeking to rely upon consent to justify a warrantless search, the State has the burden of proving "'that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.'" *Campos v. State*, 885 N.E.2d 590, 600 (Ind. 2008) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2014, 36 L.Ed.2d 854 (1973)). The voluntariness of a defendant's consent is determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 248-49. Under the particularities of this case, Bakewell

---

[1] The record reflects that Gillison paid for the hotel room.

disputes the voluntariness of the consent to enter the room and the consent to search the hotel room. We will discuss each consent separately.

## I. *Consent to Enter*

Bakewell contends that the "knock and talk investigation" employed by the officers to gain entry into the room implicated his Fourth Amendment Rights. (Appellant's Br. p. 14). Bakewell maintains that because the officers were trying to hide from the window when they first knocked on the door, the officers "communicated to a reasonable person they were not at liberty to ignore the police presence and go about their business." (Appellant's Br. p. 15).

"A knock and talk investigation involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." *Hayes v. State*, 794 N.E.2d 492, 496 (Ind. Ct. App. 2003) (internal quotation and citation omitted), *trans. denied*. The knock and talk procedure "does not *per se* violate the Fourth Amendment." *Id*. at 498. Neither probable cause nor reasonable suspicion is a constitutional prerequisite for a knock and talk investigation, and suspicion based on an anonymous tip is a proper basis for officers to enter the curtilage of private property and make inquiries of the occupants. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006). The knock and talk procedure does, however, implicate the Fourth Amendment if under the totality of the circumstances a reasonable person would not feel free to refuse the officers entry, ignore the officers' inquiries, and go about his business. *Redden v. State*, 850 N.E.2d 451, 458-59 (Ind. Ct. App. 2006), *trans. denied*. We

have previously observed that a reasonable person may not feel free to ignore officers' entreaties if, for example there is a threatening presence of several officers, one or more officers displays a weapon, an officer physically touches the person, or the tone of the officer's voice indicates that compliance with the officer's request might be compelled. *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind. Ct. App. 2000), *trans. denied*.

[15] While we have noted that a knock and talk investigation is "inherently coercive to some degree," we cannot say that an illegal seizure occurred here. *Hayes*, 794 N.E.2d at 496. The evidence most favorable to the trial court's ruling reflects that after the officers had repeatedly knocked on the door, Gillison inquired who was there. Officer Smith announced the presence of the "Sheriff's Department." (Tr. pp. 19-20). When Gillison opened the door, Officer Smith, in full police uniform, introduced himself and asked if he "could step into the room to talk to the people inside." (Tr. p. 24). The record indicates that Gillison replied affirmatively and stepped aside for the officers to enter. Officer Smith explained that they were investigating an anonymous tip of drug use. There is no evidence that the officers touched Bakewell or Gillison, drew their weapons, or used a forceful tone of voice. Accordingly, mindful of the circumstances of this exchange, the officers' conduct did not communicate to a reasonable person that he or she was not at liberty to ignore the officers' presence. *See Redden*, 850 N.E.2d at 458-59.

## II. *Consent to Search*

[16] Next, Bakewell contends that he and Gillison were in custody at the moment the officers noticed the marijuana on the nightstand and therefore the *Pirtle* warnings should have been administered prior to requesting consent to search the room.

[17] Indiana's law on consent to search derives from *Pirtle v. State*, 323 N.E.2d 635, 640 (Ind. 1975), which held that "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." Thus, "a person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given." *Jones v. State*, 655 N.E.2d 49, 54 (Ind. 1995). We determine whether a person is "in custody" by applying an objective test, asking whether a reasonable person under the same circumstances would believe that he was under arrest or not free to resist the entreaties of the police. *Sellmer*, 842 N.E.2d at 363.

[18] In support of his argument that he was in custody as soon as the officers entered the room and noticed the marijuana on the nightstand, Bakewell refers to *Peel v. State*, 868 N.E.2d 569 (Ind. Ct. App. 2007).[2] In *Peel*, five police officers and a

---

[2] Bakewell also focuses on *State v. Linck*, 708 N.E.2d 60 (Ind. Ct. App. 1999), *trans. vacated*, in support of his argument. In *Linck*, police officers were dispatched to Linck's apartment to investigate a complaint of illegal drug use. *Id*. at 61. Arriving at the apartment, the officers smelled burning marijuana. *Id*. After allowing the officers to enter his apartment, the officers informed Linck of their investigation and asked him what the problem was. *Id*. Linck replied that he had just smoked a joint. *Id*. Based on Linck's response, the officers inquired whether there was anything left. *Id*. at 62. Linck replied affirmatively and retrieved a bag of marijuana from the refrigerator and one from the bedroom. Linck was then placed under arrest. *Id*.

canine unit arriving at Peel's motel room after a complaint noticed an odor of marijuana emanating from the room. *Id*. at 572. After Peel opened the door, the officers informed him about the complaint and asked him if he had been smoking marijuana in the room. *Id*. Peel admitted to it, but informed the officers that there was nothing left. *Id*. The officers directed Peel and another occupant of the room to exit the room and one of the officers testified that neither individual was "free to wander off." *Id*. at 573. The other occupant told the officers that he and Peel had been smoking marijuana earlier and admitted to hiding the marijuana under the beds. *Id*. The officers asked for and received permission to search the room. *Id*. Based on these circumstances and the officers' incriminating questions immediately after the occupant had admitted to smoking marijuana in the room, the court concluded that Peel was in custody at the moment the officers requested consent to search the room. *Id*. at 577-78.

[19] Upon review, we find *Peel* easily distinguishable from the situation at hand. Unlike the officers in *Peel*, Officer Smith did not ask Bakewell or Gillison any incriminating questions upon noticing a bud of marijuana sitting on a table in between the two beds. In fact, Officer Smith testified that he never mentioned the marijuana on the nightstand.

---

However, we find *Linck* inapposite as *Linck* relies upon the lack of *Miranda* warnings prior to making incriminating statements to the police; no request to search Linck's apartment was ever made by the police officers. *See Jones v. State*, 655 N.E.2d 49, 54 (Ind. 1995) ("[G]iving an arrestee *Miranda* warnings [] does not sufficiently inform him of his right to consult with counsel prior to consenting to a search").

[20]     Based on the totality of the circumstances in light most favorable to the judgment, we find that Bakewell was not in custody nor was he arrested when Officer Smith requested consent to search the hotel room and therefore the *Pirtle* warnings did not attach. At trial, Officer Smith explained that he had informed Bakewell and Gillison that the officers were following up on a tip of drug use in the room. Officer Smith testified that even though he had observed a bud of marijuana, which appeared to be less than one gram, he did not notice any smell of marijuana in the room. He stated that he did not mention his observations to Bakewell or Gillison and affirmed that he would have allowed them to exit if they had decided to walk out the room. At the moment the request for a search of the room was made, Bakewell spoke voluntarily to the officers, was not physically restrained nor was he asked any incriminating questions or badgered to give consent. Only two officers were present and the entire encounter from when the officers arrived at the hotel lasted only approximately twenty-five minutes. Because Bakewell's consent to a search of the hotel room was not constitutionally defective, the trial court properly admitted the evidence discovered following the search of the room.

## III. *Search Warrant*

[21]     Lastly, Bakewell contends that Officer Smith's affidavit for search warrant was insufficient to constitute probable cause as it failed "to establish the anonymous tipster['s] reliability[.]" (Appellant's Br. p. 17). Specifically, Bakewell maintains that "[t]here is no information available as to whether the informant has given correct information in the past or the information's hearsay that the

unidentified individuals would be manufacturing methamphetamine at the location." (Appellant's App. p. 17).

[22] In determining whether to issue a search warrant, "'[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)). When reviewing a magistrate's decision to issue a warrant, the reviewing court applies a deferential standard. *Newby v. State*, 701 N.E.2d 593, 598 (Ind. 1998). We will affirm the magistrate's decision to issue the warrant if the magistrate had a "substantial basis" for concluding that probable cause to search existed. *Id*. "Substantial basis" requires us to focus on whether the reasonable inferences drawn from the totality of the evidence support the probable cause determination. *Id*.

[23] The United States Supreme Court has held that uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant. *Gates*, 462 U.S. at 227. The federal test for ensuring the reliability of a hearsay statement in a probable cause determination allows the use of hearsay only if the totality of the circumstances corroborates the hearsay. *Id*. at 230-31. The reliability of hearsay can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation

corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Jaggers*, 687 N.E.2d at 183.

[24] Indiana Code section 35-33-5-2(b) provides:

> When based on hearsay, the affidavit must either:
>
> (1) Contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
>
> (2) Contain information that establishes that the totality of the circumstances corroborates the hearsay.

[25] Although Officer Smith's affidavit for search warrant contained a reference to the hearsay of an "anonymous tip that methamphetamine was being manufactured in [] hotel room [124]," the affidavit also included the Officer's discovery of the marijuana on the nightstand and the methamphetamine under the mattress located pursuant to a valid consent to search. (State's Exh. 1). Accordingly, the reliability of the anonymous source was corroborated by the results of Officer Smith's investigation. *See Jaggers*, 687 N.E.2d at 183. Therefore, as the totality of the evidence corroborated the hearsay, there was sufficient probable cause to issue a search warrant for a continued search of the hotel room.

# CONCLUSION

Based on the foregoing, we hold that the trial court properly admitted the evidence discovered pursuant to a valid consent to search and a search warrant.

Affirmed.

Crone, J. and Altice, J. concur