## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2019, 6:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan M. Gardner
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Colton T. Vibbert, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 12, 2019 <br><br> Court of Appeals Case No. 18A-CR-2122 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. 02D05-1712-F2-41 |

**Tavitas, Judge.**

# Case Summary

Colton T. Vibbert appeals his conviction and sentence for dealing in methamphetamine, a Level 2 felony, and his adjudication for being a habitual offender. We affirm.

# Issues

Vibbert raises two issues on appeal, which we restate as follows:

> I.   Whether the trial court improperly admitted evidence that was obtained after Vibbert's girlfriend consented to a search of her home, where Vibbert occasionally stayed.

> II.  Whether the trial court abused its sentencing discretion by failing to find that Vibbert's mental health history was a significant mitigating factor.

# Facts

This case involves consent to a police search and the admissibility of evidence that law enforcement recovered in executing the search. Vibbert's girlfriend, Veronica Grear, owned a trailer located in Fort Wayne. On November 9, 2017, Fort Wayne Police Department detectives interviewed Grear and Vibbert regarding an ongoing homicide investigation. During the interview, Grear indicated that Vibbert occasionally stayed at her trailer and gave her written consent to a police search of the trailer to Detective Craig Gregory. *See* App. Vol. II p. 121. Detective Jeff Marsee interviewed Vibbert, who admitted that he

had stayed with Grear and left his vehicle at Grear's trailer the night before the interview.

[4] Later that afternoon, Detective Alan Garriott searched the trailer, pursuant to Grear's consent to search.[1] In the kitchen, Detective Garriott observed a "clear food storage container" on a metal folding chair "in the approximate center of the kitchen floor." Tr. Vol. II p. 106.

[5] Inside the clear container, officers found baggies containing a powdery substance, scales, and a box of unused food storage bags. The baggies contained methamphetamine and inositol, a cutting agent.

[6] On December 11, 2017, Detective Juan Carlos Gutierrez of the Vice and Narcotics Bureau arrested Vibbert for dealing in methamphetamine. Detective Gutierrez read Vibbert his *Miranda* rights and conducted a recorded interview. Vibbert initially stated that the methamphetamine recovered from the trailer belonged to Grear; however, Vibbert "finally admitted that the [methamphetamine] belonged to him." *Id*. at 135.

[7] On December 14, 2017, the State charged Vibbert with dealing in methamphetamine, a Level 2 felony; and maintaining a common nuisance, a

---

[1] Detective Garriott was unaware of any limitation(s) in the scope of his search of Grear's home. *See* Supp. Tr. p. 17.

Level 6 felony. The State subsequently dismissed the latter charge. In a separate information, the State alleged that Vibbert was a habitual offender.

[8] On May 17, 2018, Vibbert filed a motion to suppress evidence, in which he alleged that Grear did not freely and voluntarily give consent to the police search; and that Grear consented to a limited scope search seeking "guns, ammo, holsters, [ ] any bloody clothing[,]" and "evidence from the homicide." Supp. Tr. pp. 6, 28. The trial court conducted a hearing on Vibbert's motion to suppress on May 31, 2018 and denied the motion on June 19, 2019. *See* App. Vol. III p. 39.

[9] Vibbert was tried by jury on June 21, 2018. The jury convicted Vibbert of dealing in methamphetamine, a Level 2 felony. The parties subsequently stipulated that Vibbert was a habitual offender. At Vibbert's sentencing hearing on July 13, 2018, defense counsel asked the trial court to consider, as mitigating, that Vibbert "was diagnosed with bipolar, ADHD, and depression at a very young age, but he has not received any treatment[.]" Tr. Vol. II p. 178. Acknowledging Vibbert's significant criminal history, defense counsel argued as follows that Vibbert had found himself in a "vicious cycle" of "serving executed time, [but] not getting any mental health treatment[,]":

> I would submit to the Court that the untreated mental health problems would create the situation, so to speak, where the prior attempts at rehabilitation have failed. When people have untreated mental health issues, they struggle, especially when you're talking about bipolar and ADHD, where that person, because of the untreated mental health issues, struggles to stay in

compliance with the expectations of the authority figures, of Probation, of Parole, of alternative sentencing programs and, therefore, they don't succeed in those programs. I – and I don't know that [it is fair] to call that prior attempt at rehabilitation having been failed when that mental health issue wasn't being treated.

*Id*.

[10] The trial court declined to find Vibbert's mental health issues to be mitigating stating:

> The higher courts have been pretty clear [ ] that there has to be a connection between the charged offense and the alleged mitigating circumstance and I see no connection between the mental health issues that you claim to suffer from and the charge of dealing in methamphetamine, so I decline to find that as a mitigating circumstance.

*Id*. at 188. Finding Vibbert's criminal history to be "significant[ly] aggravating," the trial court sentenced Vibbert to thirty years in the Department of Correction ("DOC") for dealing in methamphetamine and enhanced that sentence by twenty years for the habitual offender adjudication, for an aggregate sentence of fifty years. *Id*. The trial court further ordered that Vibbert's sentence should be served consecutively to his sentences in other causes. Vibbert now appeals.

# Analysis

## I.    *Admission of Evidence*

Vibbert argues that the trial court improperly admitted evidence that was obtained in violation of his rights under the Fourth Amendment to the United States Constitution.[2]  "The general admission of evidence at trial is a matter we leave to the discretion of the trial court."  *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013).  "We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights."  *Id.* at 260.

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause.  U.S. Const. amend. IV.  "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings."  *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006).  This protection has been "extended to the states through the Fourteenth Amendment."  *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016).  "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the

---

[2] Vibbert does not argue that the search violated Article 1, Section 11 of the Indiana Constitution; we, therefore, deem that issue waived.

unlawful search or seizure absent evidence of a recognized exception." *Clark*, 994 N.E.2d at 260.

[13]        One exception to the warrant requirement occurs when consent is given to the search. A valid consent to search may be given by the person whose property is to be searched or a third party who has common authority or an adequate relationship to the premises to be searched. When showing that a third party has authority to consent, the State must demonstrate mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that "any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

While a defendant typically is without standing to challenge the voluntariness of a third party's consent, an individual may do so when that consent involves an area in which the defendant held a reasonable expectation of privacy. Also, a third party may consent to the search of the premises or property of another if actual authority exists. Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. However, if actual authority cannot be shown, then facts demonstrating that the consenting party had apparent authority to consent could prove a lawful search. *Krise v. State,* 746 N.E.2d [957,] 967 [(Ind. 2001)]. Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would warrant a man of reasonable caution to believe that the consenting party had authority over the property. However, our Supreme Court has observed that persons sharing premises may nonetheless retain areas or objects within their *exclusive control* that are not subject to search based on consent of one of the co-occupants. A co-occupant may deny joint access over an object by keeping it in a place devoted to the owner's

exclusive use or where the object is one over which only one person normally exercises control and authority or which "normally hold[s] highly personal items."

*Peel v. State*, 868 N.E.2d 569, 575-76 (Ind. Ct. App. 2007) (citations and footnote omitted).

[14] Vibbert argues that Grear lacked authority to consent to a search of the container. He relies heavily upon our Supreme Court's analysis in *Krise* and *Halsema v. State*, 823 N.E.2d 668 (Ind. 2005). Our Supreme Court summarized *Krise* as follows in *Halsema*:

> In *Krise v. State,* 746 N.E.2d 957 (Ind. 2001)[,] the defendant shared a house with a roommate. The roommate consented to a general search of the house, which ultimately led to the discovery and search of the defendant's purse. That search, in turn, revealed marijuana and a white powdery substance later identified as methamphetamine. After a careful and exhaustive review of what we characterized as the "twists and turns of Fourth Amendment law" with respect to warrantless searches, this Court ultimately reversed the defendant's conviction of possession of a controlled substance within 1000 feet of a public park on the ground that the defendant's roommate lacked authority to consent to a warrantless search of the defendant's purse. We held "the inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent— to give consent to the search of the container itself." Acknowledging that we had previously addressed cases involving third-party consent searches of a shared home and its contents, we noted, "none of these cases dealt with a third-party's authority to consent to search something like a *purse,* i.e., a

closed container that normally holds highly personal items, located within the home."

*Halsema*, 823 N.E.2d at 676 (citing *Krise*, 746 N.E.2d at 961, 968-69) (internal citations omitted).

[15] In *Halsema*, the defendant was pulled over in a vehicle and arrested for possession of marijuana. A vehicle search yielded individually-wrapped baggies of methamphetamine, controlled substances, scales, and drug paraphernalia. When police officers went to the address that the defendant provided, a resident told officers that the defendant had been staying in a bedroom in her house and had exclusive use of certain drawers in the bedroom dresser, which the resident had specifically emptied for the defendant's use. The resident then consented to a police search of the house, which yielded methamphetamine in the defendant's dresser drawer. After the defendant was convicted of various offenses, he argued on appeal that the resident lacked authority to consent to a search of his dresser drawer. We reversed the conviction on other grounds, and our Supreme Court granted transfer.

[16] Citing *Krise*, the Supreme Court concluded that "[t]he dresser drawer . . . [wa]s analogous to the purse in *Krise*—a closed container normally holding highly personal items." *Halsema*, 823 N.E.2d at 676. Ultimately, the *Halsema* Court

concluded that the resident lacked actual or apparent authority[3] to consent to a search of the dresser drawer, reasoning:

> [the defendant] enjoyed the exclusive use of at least one of the dresser drawers in [the resident]'s bedroom and because [the resident] specifically advised the officers of that fact, [the resident] did not have actual authority to consent to a search of the drawer where the methamphetamine was found, nor could an officer reasonably believe that she had such authority.

*Id*. Thus, the Court vacated the defendant's conviction and concluded that "the warrantless search of the [dresser] drawer without [the defendant]'s consent violated his Fourth Amendment right against unreasonable search and seizure"; and that the trial court "erred by admitting the seized drugs into evidence." *Id*.

[17] The instant case differs from *Krise* and *Halsema*. The container: (1) was not stored in a place that was devoted to Vibbert's exclusive use; (2) is not the sort of container that is used to store highly personal items; (3) is not the sort of object "over which only one person normally exercises control"; (4) is

---

[3] Our Supreme Court has defined "actual authority" and "apparent authority" as follows:

> Actual authority "requires a showing that there is a sufficient relationship to or 'mutual use of the property by persons generally having joint access or control for most purposes.'" As for apparent authority, "a search is lawful if the facts available to the officer at the time would 'warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'"

*Halsema,* 823 N.E.2d at 676 (citations omitted).

transparent—thus, its contents were openly visible to any viewer; and (5) was found in the kitchen, which typically is the most heavily-trafficked common area of a home. *See Krise*, 746 N.E.2d at 961, 968-69. These are not the qualities of a vessel, similar to a purse or a dresser drawer, which we imbue with heightened Fourth Amendment protections in cases involving third parties' consent to searches.

[18] For the foregoing reasons, we find that the trial court did not err in admitting the evidence recovered pursuant to Grear's consent to search her home. Grear had actual and apparent authority to consent to a search of her kitchen, including impersonal items that were in plain view.

## *II. Overlooked Mitigating Factor*

[19] Next, Vibbert argues that the trial court overlooked a significant mitigating factor—namely, his alleged mental health history. Specifically, Vibbert argues that it was "error" for the trial court "[t]o not consider [his mental health conditions]" as a mitigating factor and that "the trial court's imposed sentence is not warranted." Appellant's Br. p. 17.

[20] Sentencing decisions rest within the sound discretion of the trial court. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*.

[21] A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A trial court has discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the defendant's proffered factors to be mitigating. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). A trial court's sentencing order may not be challenged as reflecting an improper weighing of aggravating or mitigating circumstances. *Id*. at 491.

[22] "Mental illness is not necessarily a significant mitigating factor; 'rather, [it] is a mitigating factor to be used in certain circumstances, such as when the evidence demonstrates longstanding mental health issues or when the jury finds that a defendant is mentally ill.'" *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015), *trans. denied*. "[I]n order for a [defendant's] mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." *Weedman v. State*, 21 N.E.3d 873, 894 (Ind. Ct. App. 2014), *trans. denied*; *see also Archer v. State*, 689 N.E.2d 678, 685 (Ind. 1997).

[23] Here, the trial court considered Vibbert's mental health history and explicitly deemed it to lack mitigating weight due to the lack of a nexus between Vibbert's offenses and his alleged mental health conditions. Vibbert presented no

argument or evidence that: (1) supports his diagnoses; (2) reflects he was suffering from the conditions when he committed the instant offenses; or (3) indicates that the mental health conditions affected his ability to control his impulses, impaired his faculties, or had some relationship to the crimes at issue.

[24] In the absence of any evidence of a mental disease or diagnosis, with the exceptions of Vibbert's self-serving[4] statements proffered at sentencing, and no evidence of a nexus between Vibbert's crimes and his mental state, we conclude that the trial court did not abuse its sentencing discretion in refusing Vibbert's proffered mitigator. *See Corralez v. State*, 815 N.E.2d 1023, 1026 (Ind. Ct. App. 2004) (requiring a nexus between defendant's mental health and the crimes in question for mental history to be deemed mitigating).

## Conclusion

[25] The trial court did not err in admitting evidence recovered pursuant to a consent to search and did not overlook a significant mitigating factor. We affirm.

[26] Affirmed.

Crone, J., and Bradford, J., concur.

---

[4] Vibbert's pre-sentence investigation report provides that "[t]he defendant reported he was diagnosed with Bipolar Disorder, Depression, and Attention Deficit Hyperactivity Disorder, as a juvenile. He advised he was treated with medication; however, he has not been prescribed any medication for his mental health issues since age 13." App. Vol. III p. 91.